# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

(1) PARIS LaPRIEST POWELL,
   Plaintiff,

v.

(1) ROBERT BRADLEY MILLER,
 individually;
(2) ROBERT BRADLEY MILLER,
 in his official capacity;
(3) THE STATE OF OKLAHOMA;
(4) DURBIN, LARIMORE and BIALICK,
 a professional corporation;
   Defendants.

Case No. CIV-2010-01294-D

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT STATE OF OKLAHOMA, AND SUPPLEMENT TO DEFENDANT ROBERT BRADLEY MILLER'S MOTION FOR SUMMARY JUDGMENT IN HIS INDIVIDUAL CAPACITY AND BRIEF IN SUPPORT

Comes now the Defendant State of Oklahoma ("State"), and moves for judgment in its favor as there is no geniue issue as to any material fact and it is entitled to judgment as a matter of law. Defendant Robert Bradley Miller also herewith supplements his motion for summary judgment in his individual capacity (Doc. #94), as the undersigned also represents Miller in his individual capacity. The State also endorses, and adopts that motion and brief of Miller, in his individual capacity, including the statement of undisputed facts and exhibits attached thereto. In support hereof the Defendants respectfully show as follows:

## STATEMENT OF THE CASE

The only claims of Powell and Douglas remaining against the State are for negligence (See Court's Orders on motion to dismiss, Doc.# 55, in Douglas v. Miller, et

al., CIV-10-1295-D; and Doc.# 62, in Powell v. Miller, et al., CIV-10-1294-D), occurring during the subject time frame that Defendant Miller was actually an employee of the Oklahoma County District Attorney's Office, a State entity. That time frame is roughly from 1993 through the end of his employment with that office on about December 1, 1999.

Apparently the only claims remaining against Miller by either Plaintiff, are for those actions taken following Douglas' conviction in 1995 through Powell's conviction in 1997, while still in his capacity as an assistant district attorney until December 1999, and thereafter, while he is in private practice until approximately 2002. Defendants contend that Plaintiff's claims for negligence are barred either by the Oklahoma Governmental Torts Claim Act, 51 O.S. § 154(B); or because absolute prosecutorial immunity applies to all money suits for damages including acts of negligence, or lastly because Plaintiff's allegations are for intentional acts which have already been excused by the court by such defense. (any acts of Miller after his employment ends with the District Attorney's office in December 1999, cannot be held against the State as he is no longer an employee) Defendants further contend that Plaintiff's claims not already excused by absolute prosecutorial immunity should be barred by qualified immunity given less constrictive Supreme Court opinions than that followed by the court in initially dening Miller's motion to dismiss on that basis.

## Material Facts to Which No Geniue Issues Exists

Defendants endorse and adopt in full the Statement of Undisputed Material Facts, and supporting exhibits proffered in Miller's motion for summary judgment.

## BRIEF IN SUPPORT

### (Miller Supplement)

Qualified immunity acts as a defense not only from liability, but suit itself, when officers act reasonably and consistent with the constitution and civil rights even though an injury is sustained by someone. Also, it is clear that the defense of qualified immunity applies to all <u>federal</u> law claims. *Crawford-El v. Britton*, 118 S.Ct. 1584 (1988).

In *Stanton v. Simms*, 134 S.Ct. 3, 187 L.Ed. 2d 341(Nov. 4, 2013) the Court reversed the Ninth Circuit Court of Appeals and reinstated the District Court's decision in favor of a police officer finding that the law was not clearly established that a *warrantless* entry to a home while in hot pursuit on a *misdemeanor* was a Fourth Amendment violation. For purposes of the present matter, the pertinent language provided was,

> [q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects 'all but the plainly incompetent or those who knowingly violate the law. Ashcroft v. al-Kidd, 563 U.S.-----, 131 S.Ct. 2074, 2085(2011)(quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092(1986) [w]e do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' *al-Kidd*, 563 U.S. at-------, 131 S.Ct., at 2083

Qualified immunity is the presumption in § 1983 cases. In recent years, the Supreme Court has clarified what must be established for a Plaintiff to overcome the assertion of qualified immunity. The Plaintiff must establish (1) that there, in fact, was a

constitutional violation and (2) that the law was clearly established so as to put the state official on notice that her actions constituted a constitutional violation *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). This is an extremely high bar for the Plaintiff. *Id*. The Plaintiff must establish that a constitutional violation occurred and then must also establish that the constitutional rule under which the plaintiff is complaining was so clearly established *that it is beyond debate Id*.; *Ashcroft v. al–Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 2080, 2083, 179 L.Ed.2d 1149 (2011). If people can disagree on a constitutional rule or on its application to a particular set of facts, then it is not beyond all debate and qualified immunity must remain intact. *Id*; *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). See also: *Cordova v. Aragon*, 569 F.3d 1183, 1189-93 (if it is not an "easy" question, then qualified immunity attaches). One way to establish that a constitutional rule is clearly established is to point to a Supreme Court case on point or on such a wealth of case law from circuit courts that no reasonable state official could debate the existence of the constitutional rule and its application to a set of facts. *Reichie v. Howards*, 132 S.Ct. 2088, 2093 (2012). However, one Supreme Court case which can be distinguished from the case under consideration, or points of law over which circuits are split, do not create clearly established law. *Id*. (finding that two decisions from the Tenth Circuit did not create "clearly established" law, particularly since one decision rested on an abrogated case).

In the case of *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565(2009) the Supreme Court gave much greater flexibility to the Court in analyzing qualified immunity defenses than provided in *Saucier v. Katz,* 553 U.S. 194 (2001).

In the *Pearson* case, the Court acknowledged the inflexibility of the two step process of *Saucier, i.e.*, and now allows the court to determine which of the two prongs of qualified immunity should be addressed first.

The Court noted that [t]he protection of qualified immunity applies regardless of whether the government officials error is "a mistake of law, a mistake of fact, or mistake based on mixed questions of law and fact." *citing Groh v. Ramirez*, 540 U.S. 551, 567 (2004).

Whether a statutory or constitutional right was clearly established at the time of the official's conduct is "an 'essentially legal question.'" *Crawford–El v. Britton*, 523 U.S. 574, 588 (1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526–29 (1985). ("We have repeatedly told courts ... not to define clearly established law at a high level of generality.") (citations omitted). see *al- Kidd*, ––– U.S. ––––, 131 S.Ct. at 2083 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). "Reasonable knowledge of the law means ... knowledge of present constitutional law [and] involves knowledge only of legal rules that were 'clearly established' at the time of the conduct at issue." *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991) (citation omitted). Thus, "[w]hen properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who

knowingly violate the law.' "*al- Kidd*, 131 S.Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

With respect to the jurisprudence of the subject time, 1993-1997, the United States Supreme Court noted with favor an open file policy as a means of complying with the evidentiary responsibility of prosecutors, *Strickler v. Greene, 527 U.S. 263, 1999.* Importantly the commentators recognized that open file policies free prosecutors from the challenge of guessing the impact that a piece of evidence might have at trial. See *Criminal Sanctions and Solutions in the New Era of Scrutiny, 61 Vand. Law Rev. 1935, 1961, 1962 (2008)(d).* At footnote # 23 of the *Strickler* opinion, the Court says, "…we certainly do not criticize the prosecutors use of the open file policy…"

Open file policies were recommended by the ABA Standards for criminal justice. ABA Standards for Criminal Justice 11-2.1 (2nd Add. 1980). At the time of Mr. Miller's complained actions the ABA had even determined that a prosecutor's erroneous judgment, as long as the judgment was made in good faith about whether evidence was favorable or unfavorable to the defense did not constitute an ethical violation. ABA Comm. On Ethics and Professional Responsibility Formal Op. 09-454 ed. (27) 2009. *Shabazz v. Artez*, 336, Fed.3rd 154 (2nd Cir. 2003) must be considered. In *Shabazz* the court determined that the government is free to reward witnesses for their cooperation with favorable treatment without disclosing its intention to do, provided it does not promise anything prior to the testimony. Further, "…the witnesses general and hopeful expectation of leniency is not sufficient to create an agreement or understanding that they

would in fact receive leniency in exchange for testimony…" at 164. Further, the fact that a prosecutor afforded favorable treatment to government witness standing alone does not establish the existence of an underlying promise of leniency in exchange of testimony.

The Court's order on the Defendant's motion to dismiss did not analyze qualified immunity pursuant to *al-Kidd, id*., which makes the standard more expansive for interpretation. Given the open file policy of the Oklahoma County DA's office at the time, and following the "beyond debate" conclusion compelled by *al-Kidd, Id*., qualified immunity attaches and the claims against Miller should be denied.

Lastly, it if important to note that once a defendant has properly raised qualified immunity, the burden shifts to the Plaintiff to satisfy the strict two part test of *Saucier, id.*: first that the defendant's actions violated a constitutional right and, secondly, that the right was clearly established at the time of the conduct. *Rojas v. Anderson,* 727 F.3d 1000 (10th Cir. 2013), at 1003, *cert denied*, 134 S.Ct. 800, 187 L.Ed2d 596 (Dec. 9, 2013). Then and only then, does the traditional burden go back upon the Defendant/movant to show that there is no genuine issue as to any material fact. *Id*. Although it is still clear that all disputed facts must be taken in the light most favorable to the non-movant. *Tolan v. Cotton*, 572 U.S. _____, (May 5th, 2014).

## **NEGLIGENCE CLAIMS**

The only claims remaining against the State, according to the Court's order on the motions to dismiss are for negligence. However, judgment should be entered in favor of the State for several reasons:

First, the Oklahoma Governmental Torts Claim Act (OGTCA) requires more than mere invalidation of a conviction. 51 OS § 154(B)(1) & (2). As the Court correctly noted in it's previous order, the federal civil rights claims are controlled by the Oklahoma two year statute of limitations and accrue once the claim is cognizable, ie., upon invalidation of the conviction. *Heck v. Humphrey,* 512 U.S. 477 (1994).

However, Oklahoma law does not equate to the "invalidation" concept of *Heck*. *Id.*, Instead, Oklahoma allows for such claims under the OGTCA only where a determination has been made by the Governor, or by a court of competent jurisdiction, of actual innocence and without further recourse by the State for retrial. 51 OS § 154(B)(1) and (2), respectively. Neither of these apply to Plaintiff Douglas or Powell. 51 OS § 156(B). The OGTCA is the exclusive basis for tort liability against the State. §153.

The only exception to this would be where the post conviction relief, invalidation, or finding of innocence took place prior to the effective date of § 154(B)(1) and(2), which was May 23, 2003. Prior to the effective date of the act, the analysis of "actual finding of innocence was on a case by case basis. *Wilhoit v. State*, 2009 OK 83. The Wilhoit court specifically found his petition timely where he had filed within a year of the effective date of the act of May 23, 2003, although his case had been reversed in 1991, and dismissed at a retrial in1993.

This "actual innocence" concept was further clarified in *Courtney v. State*, 2013 OK 64, which provides that "[t]his threshold determination is a requirement created by the GTCA as a predicate to a tort claim against the State for wrongful conviction." Para.

4. Powell and Douglas do not have a finding by the habeas court determining that either are actually innocent of the crime charged. As such their claims for negligence should be barred.

Section 152(9) of the GTCA provides that "scope of employment" means performance by an employee acting in good faith within the duties of his office. If the employee is acting within the scope of his employment at the time of the act or omission which is the basis for the claim, then he is acting on behalf of the State. However, if the employee is <u>not</u> acting within the scope of his employment, the State cannot be held liable for his conduct. This has been the law even prior to the enactment of the GTCA, when the State's liability was determined under a common-law regime of sovereign immunity. *Hazlett v. Board of Comm'rs.*, 32 P.2d 940 (Okl. 1934); and *Cooper v. Millwood Independent School District No. 37*, 887 P.2d 1370 (Okl. 1994). The State is not liable for the acts of employees who are acting in bad faith or with malice. The Oklahoma Supreme Court recognized this exemption in *Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okl. 1996) when it explained:

> The Governmental Tort Claims Act is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort. Subject only to the Act's specific limitations and exceptions, governmental immunity is waived under the Act and governmental accountability is extended to torts for which a private person would be liable, unless they are committed outside of the course and scope of one's employment or unless they are committed in bad faith or in a malicious manner. (footnotes omitted).

A similar situation was examined in *Tuffy's Inc. v. City of Oklahoma City*, 2009 OK 4 in which the Oklahoma Supreme Court dismissed a claim of tortious interference with a business relationship against the City of Oklahoma City. The Supreme Court stated:

> When a tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of employees, there can be no liability against a political subdivision in a suit based on the GTCA. This is because the GTCA explicitly excludes bad faith action from its definition of the scope of employment, and a political subdivision is relieved from liability for tortious conduct committed by its employees outside the scope of employment. *Id.* at ¶ 13.

It should also be noted that this is not the first time the Oklahoma Supreme Court has addressed the issue of tort claims against the State for the alleged bad faith actions of its employees. In *Fehring v. State Insurance Fund*, 2001 OK 11, ¶ 23, 19 P.3d 276, 283, the Oklahoma Supreme Court addressed the scope of liability of the State of Oklahoma under the Governmental Tort Claims Act for torts by state employees. The *Fehring* Court noted that the Governmental Tort Claims Act affirmed the State's sovereign immunity and waives such immunity only to the extent and in the manner provided in the Act. The *Fehring* Court further observed that the legislature had expressly provided that the state shall not be liable for any act or omission of an employee acting outside the scope of employment. Under the Act, to be within the scope of employment, an employee must be acting in good faith. *Id.* The Oklahoma Supreme Court concluded in *Fehring* that the State incurs liability only when State employees are acting in good faith and retains immunity on a tort claim "when, in order to prevail on the particular tort

claim sued upon, a plaintiff is required, as a matter of law, to show conduct on the part of a governmental employee that would mandate a determination the employee was not acting in good faith." *Id.*

Even assuming arguendo, that the State were negligent, where an independent act occurs, (which has already been barred by absolute immunity), and that is sufficient in itself to cause the resultant alleged harm, the State would still not be liable for negligence. Oklahoma recognizes intervening acts that operate independently to cause harm and supervene to cut off liability for any initial negligence. See: *Southern Pacific Co. v. Ralston*, 62 F.2d 1026 (10th Cir. 1933); *Gaines-Tabb v. ICI Explosives, USA, Inc*. 995 F.Supp. 2d 1304 (W.D. Okla. 1996); and *Henry v. Merck & Co., Inc.,* 877 F.2d 1489 (10th Cir. 1989). If an act is intentional, it is outside the course and scope of employment and thereby not recoverable under the Oklahoma Governmental Tort Claims Act. If the conduct is negligent action, it would then be exempt under 51 O.S. § 155(2) which states that:

> The state or a political subdivision shall not be liable if a loss or claim results from:
> 2. Judicial, quasi-judicial, or prosecutorial functions, other than claims for wrongful criminal felony conviction resulting in imprisonment provided for in Section 154 of this title;

As the OGTCA is the exclusive means of suing the State for negligence, the Plaintiff cannot maintain his suit as there has been no finding of actual innocence. Furthermore, the tort claims act provides an exemption from liability where the conduct complained of is limited or barred by other law. §155(16). In the present matter the

court has already held that all of Miller's conduct in the prosection of Powell and Douglas is barred by absolute prosecutorial immunity. There should be no additional means of recourse against the State for negligence for the same conduct whether intentional or merely negligent.

Likewise, prosecutorial absolute immunity does not appear to be nearly as narrow as drawn by the court to exclude only Miller's intentional conduct. "It is well settled that 'absolute immunity bars *suits for money damages* for acts made in the exercise of prosecutorial or judicial discretion." *Springer v. Shern*, 2011 WL 2971172 (N.D. Okla.), citing *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007), quoting *Guttman v. Khalsa,* 446 F.3d 1027, 1033 (10th Cir. 2006), citing *Mireles v. Waco*, 502 U.S. 9, 13 (1991). Courts are virtually uniform in this immunity. *Imbler v. Pachtman*, 424 U.S. 409, 420, 96 S.Ct. 984 (1976). Such an encompassing concept of absolute immunity "is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *B.T. a minor child v. Santa Fe Public Shools*, 506 F. Supp. 2d 718 (D. New Mexico, 2007) citing *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 502 (1997).

It makes little or no sense to apply prosecutorial immunity to the line prosecutor, but leave the employing district attorney exposed for that very conduct by calling it negligence when all else fails. Plaintiff's have no evidence whatsoever which would

explain, or warrant this incongruous results.  Judgment should be entered in favor of the State and Brad Miller individually.

Wherefore, Defendants request the Court to enter judgment in their favor as there is no genuine issue as to any material fact.

Respectfully submitted,

/s/ Richard N. Mann
**RICHARD N. MANN, OBA #11040**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, Oklahoma  73105
Telephone:        (405) 522-2921
Facsimile:         (405) 521-4518
Email: Richard.Mann@oag.ok.gov
*Attorney for Defendants, Robert Bradley Miller, individually and in his official capacity, and the State of Oklahoma*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May 2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

| | |
|---|---|
| Rand C. Eddy<br>Stephanie M. Lorance<br>Ryan Eitzmann<br>rand@lawokc.com<br>stephanie@eddy-law.com<br>ryan@eddy-law.com<br><br>Mark H. Barrett<br>barrettlawoffice@gmail.com | Amy J. Pierce<br>George S. Corbys, Jr.<br>apierce@corbynhampton.com<br>gcorbyn@corbynhampton.com<br><br>Kayce L. Gisinger<br>Murray E. Abowitz<br>klg@abowitzlaw.com<br>mea@abowitzlaw.com<br>mainmail@abowitzlaw.com<br><br>Wilson D. McGarry<br>Wilson.mcgarry@oag.ok.gov |

/s/ Richard N. Mann
Richard N. Mann