IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PARIS LaPRIEST POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-2010-01294-D; |
| | ) | Case No. CIV-2010-01295-D |
| (1) ROBERT BRADLEY MILLER, | ) | |
| individually, (2) ROBERT BRADLEY | ) | |
| MILLER, in his official capacity; | ) | |
| (3) THE STATE OF OKLAHOMA; | ) | |
| (4) DURBIN, LARIMORE and | ) | |
| BIALICK, a professional corporation; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| YANCEY LYNDELL DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| (1) ROBERT BRADLEY MILLER, | ) | |
| individually, (2) ROBERT BRADLEY | ) | |
| MILLER, in his official capacity; | ) | |
| (3) THE STATE OF OKLAHOMA; | ) | |
| (4) DURBIN, LARIMORE and | ) | |
| BIALICK, a professional corporation; | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court are the opposing Motions for Summary Judgment filed pursuant to Fed.R.Civ.P. 56 of Defendant State of Oklahoma ("State") [Doc. No. 95, Case No. CIV-2010-1294; and Doc. No. 93, Case No. CIV-2010-1295] and Plaintiff Yancey L. Douglas ("Douglas") [Doc. No. 82, Case No. CIV-2010-1295-D].[1] State seeks judgment as a matter of law that it is

---

[1]The two State motions are identical, but separately filed in each case.

not liable in negligence to Douglas and Plaintiff Paris LaPriest Powell ("Powell"), whereas Douglas seeks judgment as a matter of law that State is so liable. Section 154(B) of Oklahoma's Governmental Tort Claims Act (GTCA), OKLA. STAT. tit. 51, § 151 *et seq.*, allows claims based on wrongful criminal felony conviction only where the claimant has received either judicial relief or a full pardon based on actual innocence of the crimes for which they were sentenced. Because neither Douglas nor Powell have received the requisite absolution of guilt, State argues they are unable as a matter of law to proceed with their negligence claims. The Court agrees.

## Undisputed Facts[2]

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging Defendants violated Plaintiffs' constitutional rights in connection with Plaintiffs' murder convictions in Oklahoma County and their subsequent incarceration.[3] Plaintiffs also assert pendent state law claims for negligence and malicious prosecution based on their allegedly wrongful criminal convictions.[4] They contend Defendant Robert Bradley Miller ("Miller"), the Oklahoma County assistant district attorney who prosecuted each of them, wrongfully procured their convictions by

---

[2] This statement includes material facts presented by the parties that are supported as required by Fed.R.Civ.P. 56(c)(1) or otherwise shown by the record. If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded. All facts are stated in the light most favorable to the non-moving party.

[3] State charged each Plaintiff with first degree murder and shooting with intent to kill for the 1993 drive-by shooting death of Shauna Farrow and wounding of Derrick Smith. The cases were severed for trial. In July 1995, Douglas's jury convicted him on both counts and imposed the death penalty for first degree murder and life imprisonment for shooting with intent to kill. Almost two years later, in May 1997, Powell's jury likewise convicted him on both counts and imposed identical sentences.

[4] The Court earlier dismissed Plaintiffs' malicious prosecution claims against State. *Douglas v. Miller,* 864 F.Supp.2d 1205, 1221 (W.D.Okla. 2012) and *Powell v. Miller*, No. CIV-10-1294-D, 2013 WL 160790, at *2 (W.D.Okla. Jan. 14, 2013).

suborning perjury and suppressing exculpatory evidence during trial. Plaintiffs further allege Miller took active steps in the years following their convictions to ensure such perjury and exculpatory evidence remained concealed. Specifically, Plaintiffs insist Miller induced a witness, Derek Smith ("Smith"), to falsely identify Plaintiffs as the perpetrators of the crimes and that, in return for Smith's trial testimony, Miller agreed to assist Smith in obtaining favorable treatment in an upcoming parole hearing as well as in any future criminal matters.[5]

Plaintiffs also allege that, following their convictions and while he was still in the State's employ, Miller took steps to fulfill his part of the agreement with Smith by influencing other prosecutors to file reduced charges or otherwise secure leniency for Smith in criminal matters unrelated to Plaintiffs' cases.[6] Plaintiffs insist Miller's purpose in so doing was to ensure Smith would continue to conceal the false nature of his trial testimony as well as both the fact and nature of his agreement with Miller. Plaintiffs further contend Miller persisted in this wrongful conduct after he left the Oklahoma County District Attorney's office for private practice at the law firm of Durbin, Larimore and Bialick[7] in December, 1998. Plaintiffs maintain that without

---

[5] Although Plaintiffs were tried separately, Smith testified in both trials. As the Tenth Circuit explained in its decision affirming the District Court's decision to grant Powell's petition for a writ of habeas corpus and reversing the District Court's decision to deny Douglas's petition for the same, Smith later recanted his identification testimony. *Douglas v. Workman*, 560 F.3d 1156, 1167-68 (10th Cir. 2009).

[6] The Tenth Circuit discussed the evidence reflecting the assistance Miller provided to Smith after Plaintiffs' convictions and indicated Miller continued to assist Smith until 2002. *Id*. at 1165-67.

[7] This Court earlier granted the law firm's motions to dismiss all claims against it. *See Douglas v. Miller*, No. CIV-10-1295-D, 2012 WL 1066129, at *8 (W.D.Okla. March 29, 2012) and *Powell v. Miller,* No. CIV-10-1294-D, 2013 WL 161143, at *2 (W.D.Okla. Jan. 14, 2013).

Smith's testimony, Miller would have had insufficient evidence to continue his prosecution or justify their continued incarceration.[8]

After sixteen years of imprisonment and extensive litigation in both state and federal court, Plaintiffs succeeded in their quest for habeas relief. *See Douglas v. Workman*, 560 F.3d 1156, 1196 (10th Cir. 2009). The Oklahoma County District Attorney dismissed murder charges against Plaintiffs on October 2, 2009 and declined to retry either of them. Neither the Pardon and Parole Board nor the Governor made a determination that Plaintiffs did not commit the offenses for which they were convicted. Likewise, no finding exists by a court of competent jurisdiction to the effect that Plaintiffs were actually innocent of the crimes in question.

Following their release, Plaintiffs filed tort claim notices with the Office of Risk Management, Administrator of the State of Oklahoma's Department of Central Services ("ORM") on March 26, 2010, seeking damages "for 16 years of confinement, lost wages, emotional distress, and other psychological damages *relating to [their] wrongful felony conviction[s]*." (Emphasis added.) In her June 4, 2010 letters to Plaintiffs denying their claims, an ORM Senior Claims Specialist reported the bases for denial included "no finding of 'actual innocence' . . . as defined and required by the Governmental Tort Claims Act 51 O.S. § 154(B), prosecutorial immunity of State employees and no negligence on the part of the State."

**Procedural History**

Douglas and Powell filed their initial complaints against Defendants on December 1, 2010. Miller, in both his individual and official capacities, filed motions to dismiss, arguing

---

[8]After reviewing the entire state trial record, the Tenth Circuit concluded that "[h]ad the jury discounted Smith's testimony as not credible, it almost certainly would not have had sufficient evidence on which to convict." *Douglas v. Workman,* 560 F.3d at 1174.

4

Plaintiffs' allegations were insufficient to state claims for relief against him in either capacity. State joined Miller's motion to dismiss the official-capacity claims,[9] arguing Plaintiffs failed to allege facts sufficient to state a claim for relief against it. On March 30, 2012, the Court entered an Order in the Douglas lawsuit granting in part Defendants' motion to dismiss. The Court held that to the extent Douglas sought damages against Miller under § 1983 for suborning perjury and suppressing evidence in preparation for and during trial, prosecutorial immunity acted as an absolute bar to such claims. *Douglas v. Miller*, 864 F.Supp.2d 1205, 1215 (W.D. Okla. 2012). However, the Court rejected Miller's motion to dismiss the post-prosecution, individual-capacity claims against him on qualified-immunity grounds. *Id.*, at 1217.

Reasoning the requisite malice would negate the element of good faith required to hold State liable, the Court granted State's motion to the extent it sought dismissal of Douglas's pendent malicious prosecution claim under the GTCA. *Id.* at 1221. But the Court agreed with Douglas that his negligence claim against State survived dismissal at the pleading stage because proof of malice is not required under that theory of recovery. *Id.*

In reaching the same decision on identical motions Defendants later filed in the Powell case, the Court adopted and incorporated its rulings and Order in the Douglas lawsuit. *Powell v. Miller*, No. CIV-10-1294-D, 2013 WL 160790 (W.D. Okla. Jan. 14, 2013).

Subsequently, Douglas, Powell, and the two remaining Defendants each filed separate motions for summary judgment under Fed.R.Civ.P. 56 on May 13, 2014. State styled its motion

---

[9]To the extent Plaintiffs characterize their tort claims as asserted against Miller in his official capacity they are asserting claims against the State, and the Court references these claims as directed against the State. *See Douglas v. Miller*, 864 F.Supp.2d 1205, 1220, n.6 (W.D. Okla. 2012) ("A claim against an individual acting in his official capacity is a claim against the State.").

as both its own motion for summary judgment and a supplement to Miller's motion.[10] In it, State "endorse[d] and adopt[ed] in full the Statement of Undisputed Material Facts and supporting exhibits proffered in Miller's motion for summary judgment."[11] Plaintiffs responded individually to each Defendant's motion and Defendants timely filed joint replies. Defendants likewise responded separately to each Plaintiff's motion for summary judgment. Although Plaintiff Powell timely filed replies to each Defendant's response, Plaintiff Douglas did not reply to either one. The Court herein addresses the summary judgment motions of Douglas and State; the remaining motions will be addressed separately.

---

[10]State's curious attempt to supplement Mr. Miller's motion is procedurally infirm on multiple grounds, but is disregarded for purposes of the instant motions as State did not obtain leave of Court to assert such a supplemental motion and cannot include two motions in one filing. *See* LCvR 7.1 (c) and (i).

[11]Citing no authority for the proposition, Powell argues the Court should summarily deny State's summary judgment motion because rather than set forth its own statement of undisputed facts, State attempts to adopt the undisputed material facts Miller delineated in his parallel motion. Powell claims that, in so doing, State failed to provide a fair basis for Plaintiffs to respond in support of their negligence claim. Although Fed.R.Civ.P. 10 explains, "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in another motion," it does not address whether a party may incorporate statements found in a motion as opposed to a pleading. (*See* Fed.R.Civ.P. 7(a), (b) for the distinction between "pleading" and "motion.") However, State's adoption and endorsement of Miller's statement of undisputed material facts complies with Fed.R.Civ.P. 56(c)(1), which states in pertinent part:

> ***Supporting Factual positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials . . . .

The Court concludes that State's statement of undisputed facts is sufficient to provide Plaintiffs with a fair basis to respond to State's motion for summary judgment on their negligence claims.

In support of its motion, State argues it is entitled to judgment as a matter of law on Plaintiffs' negligence claims because neither the Governor, the Pardon and Parole Board, nor the habeas court found Plaintiffs actually innocent of the crimes for which they were convicted, as §§ 154(B)(2)(e) and 156(H) of the GTCA require in order for a claimant to proceed against the State with claims based on wrongful felony conviction. Although Plaintiffs at times expansively describe the contours of their negligence claims, their underlying pleadings establish that the claims are based on and inextricably tied to their alleged wrongful felony convictions and resulting imprisonment (*see e.g.*, ¶ 59 of both operative pleadings: "These various forms of negligence constituted direct, proximate and primary causes of [Plaintiffs'] conviction and continued imprisonment . . . .").

## Summary Judgment Standard

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Silverstein v.*

*Federal Bureau of Prisons*, 559 Fed.Appx. 739, 752 (10th Cir. 2014); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries this initial burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler*, 144 at 671. To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See* Fed.R.Civ.P. 56(c)(1)(A); *see also Adler*, 144 F.3d at 671. "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed.R.Civ.P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## Discussion

The GTCA is the exclusive basis for tort liability against State. OKLA. STAT. tit. 51 § 153 (2011). "Governmental immunity of the state and its political subdivisions is waived 'only to the extent and in the manner provided in' the Act." *Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1066 (1999) (quoting OKLA. STAT. tit. 51 § 152.1(B)). "Subject only to the Act's specific limitations and exceptions, the GTCA extends governmental accountability to all torts for which a private person or entity would be liable." *Id*.

The GTCA exempts the state and political subdivisions from liability for claims resulting from a variety of conduct, including "[j]udicial, quasi-judicial, or prosecutorial functions, *other than* claims for wrongful criminal felony conviction resulting in imprisonment provided for in Section 154 of this title." OKLA. STAT. tit. 51 § 155(2) (emphasis added). The primary statutory

8

authority for a claim for wrongful conviction is § 154(B) of the GTCA, added to the statutory scheme in 2003, which provides:

> 1. Beginning on the effective date of this act, claims shall be allowed for wrongful criminal felony conviction resulting in imprisonment if the claimant has received a full pardon on the basis of a written finding by the Governor of actual innocence for the crime for which the claimant was sentenced or has been granted judicial relief absolving the claimant of guilt on the basis of actual innocence of the crime for which the claimant was sentenced. The Governor or the court shall specifically state, in the pardon or order, the evidence or basis on which the finding of actual innocence is based.
>
> 2. As used in paragraph 1 of this subsection, for a claimant to recover based on "actual innocence", the individual must meet the following criteria:
>
>> a. the individual was charged, by indictment or information, with the commission of a public offense classified as a felony,
>>
>> b. the individual did not plead guilty to the offense charged, or to any lesser included offense, but was convicted of the offense,
>>
>> c. the individual was sentenced to incarceration for a term of imprisonment as a result of the conviction,
>>
>> d. the individual was imprisoned solely on the basis of the conviction for the offense, and
>>
>> e. (1) in the case of a pardon, a determination was made by either the Pardon and Parole Board or the Governor that the offense for which the individual was convicted, sentenced and imprisoned, including any lesser offenses, was not committed by the individual, or
>>
>> (2) in the case of judicial relief, a court of competent jurisdiction found by clear and convincing evidence that the offense for which the individual was convicted, sentenced and imprisoned, including any lesser included offenses, was not committed by the individual and issued an order vacating, dismissing or reversing the conviction and sentence and providing that no further proceedings can be or will be held against the individual on any facts and circumstances alleged in the proceedings which had resulted in the conviction.

Such claims are further governed by the limitation-of-action provision of § 156(H):

> H. For purposes of claims *based on* wrongful felony conviction resulting in imprisonment provided for in Section 154 of this title, *loss occurs on the date that the claimant receives a pardon based on actual innocence from the Governor or the date that the claimant receives judicial relief absolving the claimant of guilt based on actual innocence*; provided, for persons whose basis for a claim occurred prior to the effective date of this act, the claim must be submitted within one (1) year after the effective date of this act.

(Emphasis added). Having never received a finding of actual innocence, Plaintiffs have not experienced a "loss" within the meaning of § 156(H); nor can they meet the criteria set forth in § 154(B).[12]

Douglas, in his response, insists his negligence allegation relates not just to Miller's actions but to the allegation set forth in Douglas's Second Amended Complaint that "[r]epresentatives of the State of Oklahoma, including investigators for the Attorney General's Office, wrongfully prolonged Mr. Douglas's improper incarceration by threatening Derrick Smith with perjury charges if he did not continue to implicate Douglas." Douglas argues State cannot be entitled to summary judgment on the issue of Plaintiffs' pendant tort claims because it merely incorporated codefendant Miller's statement of facts, and Miller's statement does not address Douglas's allegations regarding the allegedly negligent conduct of State's investigators.

---

[12]The only claimants not required to obtain a determination of actual innocence by pardon or judicial relief prior to filing and pursuing a claim under the GTCA are persons whose basis for a wrongful conviction claim occurred prior to the effective date of § 154(B). *Wilhoit v. State of Oklahoma*, 226 P.3d 682, 686 (Okla. 2009). To ultimately prevail, such pre-§ 154(B) claimants must nevertheless present evidence they did not commit the offenses for which they were convicted, sentenced and imprisoned. *Id.* They also must have filed their claims against the State within one year of the effective date of § 154(B) or their claims would be forever barred. OKLA. STAT. tit. 51 § 156(H). Because § 154(B) of the GTCA went into effect May 28, 2003 and Plaintiffs did not obtain legal relief from their convictions until October 2, 2009, Plaintiffs' claims post-date the GTCA waiver of immunity and, thus, they must obtain a finding of actual innocence in compliance with §§ 154(B) and 156(H) in order to proceed with tort claims based on wrongful felony conviction.

In support of his argument, Douglas does nothing more than cite the above-referenced allegation from his Second Amended Complaint. He does not set forth specific facts showing there is a genuine issue for trial on the alleged negligence of State's investigators. *See* Fed.R.Civ.P. 56(c)(1); *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) ("[W]e consider the evidence in the light most favorable to the non-moving party," but "unsupported conclusory allegations do not create a genuine issue of fact"); *Adler*, 144 F.3d at 670-01 (holding that where the movant meets its "initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law," the nonmovant "may not simply rest upon its pleadings" but must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant") (internal quotations omitted).

Moreover, such allegations are also subject to the constraints of the GTCA discussed *supra*, and would fail for the same reasons.

The Court also finds unavailing Douglas's argument that the doctrine of collateral estoppel, also known as issue preclusion, applies and that the Court, in light of the Oklahoma Supreme Court's ruling in *State of Oklahoma ex rel. Okla. Bar Ass'n v. Miller*, 309 P.3d 108 (Okla. 2013), should hold State negligent as a matter of law.[13] Collateral estoppel refers "to the

---

[13]In that proceeding, the Oklahoma Bar Association filed a complaint with the Chief Justice of the Oklahoma Supreme Court charging Miller with five counts of professional misconduct associated with his alleged "irresponsible and deceitful" actions concerning events before, during, and after Plaintiffs' murder trials. After a fourteen-day evidentiary hearing in June 2012, the Professional Responsibility Tribunal ("PRT") generated a detailed, sixty-eight page recitation of the facts and procedural history and recommended Miller receive a one-year suspension from the practice of law and pay the entire costs of the proceedings. The Supreme

11

effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n. 1, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citation and footnote omitted).

The offensive use of collateral estoppel is permitted in federal court and District Courts have broad discretion to determine when it should be applied. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct., 645, 58 L.Ed.2d 552 (1979). In the Tenth Circuit, the following four elements be met for the doctrine of collateral estoppel to apply:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992) (quoting *In re Lombard*, 739 F.2d 499, 502 (10th Cir. 1984)); *see also Coffey v. Dean Witter Reynolds, Inc.*, 961 F.2d 922, 925 (10th Cir. 1992).[14] The dispositive issue before the Oklahoma Supreme Court in *State of Oklahoma*

---

Court of Oklahoma, in its *de novo* review of the PRT's recommendation, adopted and incorporated the PRT's lengthy report and concluded that three of the five allegations of misconduct had been established by clear and convincing evidence. The Oklahoma Supreme Court held Miller's actions warranted a 180-day suspension and the imposition one-fifth of the total costs of the disciplinary proceeding.

[14]The Oklahoma Court of Criminal Appeals follows the Tenth Circuit's collateral estoppel jurisprudence. "To apply collateral estoppel, the following elements must be established: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication;

*ex rel. Okla. Bar Ass'n v. Miller*, *supra,* was whether, under the Oklahoma Rules of Professional Conduct, OKLA. STAT. tit. 5, Ch. 1, App. 3-A, "the circumstances which led to reversal of the death penalty conviction for prosecutorial misconduct also constitute misconduct requiring attorney discipline." *State of Oklahoma ex rel. Okla. Bar Ass'n v. Miller*, 309 P.2d at 113.

While the disciplinary proceeding was a final adjudication on the merits of the Oklahoma Bar Association's professional misconduct complaint against Miller, the issue of whether Miller was negligent within the meaning of Oklahoma tort law was before neither the PRT nor the Oklahoma Supreme Court. The proceeding was an opportunity for the Oklahoma Supreme Court "to inquire into and to gauge [Miller's] continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession." *State of Oklahoma ex rel. Okla. Bar Ass'n*, 309 P.3d at 113. Neither State nor Plaintiffs were parties to the disciplinary proceeding. It is indisputable that State, a non-party, did not have a full and fair opportunity to defend against negligence claims during the OBA's hearing on professional misconduct charges against Miller given that the issue of Miller's liability in negligence under Oklahoma tort law was not adjudicated therein.

Moreover, the Oklahoma Rules of Professional Conduct expressly limit the reach and effect of adjudicated violations:

> Violation of a Rule should not give rise to a cause of action nor should it create presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct

---

and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1022 (10th Cir. 2001), *cert. denied*, 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421 (2001)." *Smith v. State*, 46 P.3d 136, 137–138 (Okla. Crim. 2002) (footnotes omitted).

> through disciplinary agencies.  They are not designed to be a basis for civil
> liability.  Furthermore, the purpose of the Rules can be subverted when they are
> invoked by opposing parties as procedural weapons.  The fact that a Rule is a just
> basis for a lawyer's self-assessment, or for sanctioning a lawyer under the
> administration of a disciplinary authority, does not imply that an antagonist in a
> collateral proceeding or transaction has standing to seek enforcement of the Rule.
> Accordingly, nothing in the Rules should be deemed to augment any substantive
> legal duty of lawyers or the extra-disciplinary consequences of violating such a
> duty.

OKLA. STAT. tit. 5, Ch. 1, App. 3-A, § Scope, ¶ 20.  Indeed, the Oklahoma Supreme Court has described bar disciplinary proceedings as being "sui generis" and "not civil in nature" but "more in the nature of a penal proceeding to which the rules governing interjurisdictional preclusion in civil cases do not apply."  *State ex rel. Oklahoma Bar Ass'n v. Patterson*, 28 P.3d 551, 554-55 (Okla. 2001).

Thus, collateral estoppel is not properly available here to support liability of State for negligence.

Viewing the facts in the light most favorable to Plaintiffs, the undisputed lack of an actual-innocence finding is a failure of proof that precludes their wrongful-conviction-based negligence claims against State.  Plaintiffs can point to no genuine issue of material fact to forestall this conclusion.[15]  Accordingly, State's motion for summary judgment regarding Plaintiffs' negligence claims against it must be granted and Plaintiff Douglas's motion for summary judgment denied.

---

[15]That Plaintiffs' negligence claims survived dismissal at the pleading stage under the standard established by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), is no deterrent to the Court's grant of summary judgment here after discovery and the opportunity to present a summary judgment record assessed under Fed.R.Civ.P. 56.

14

**Conclusion**

For these reasons, the Court finds that State is entitled to summary judgment on Plaintiffs' negligence claims.

IT IS THEREFORE ORDERED that Defendant State of Oklahoma's Motions for Summary Judgment [Doc. No. 95, Case No. CIV-2010-1294; and Doc. No. 93, Case No. CIV-2010-1295] are GRANTED and Plaintiff Yancey Lyndell Douglas's Motion for Summary Judgment [Doc. No. 82, Case No. CIV-2010-1295-D] is DENIED.

IT IS SO ORDERED this 30th day of March, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE